**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**---------------------------------------------------------X**
RUSSELL RILEY,

                       Plaintiff,

               -against-

ANDREW CUOMO, i*n his official capacity as*
*governor of the State of New York*, NEW YORK
STATE POLICE,

                     Defendant(s).
**---------------------------------------------------------X**

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-01631 (ADS)(AYS)

**APPEARANCES:**

**Christopher Joseph Cassar**
*Attorney for the Plaintiff*
13 East Carver Street
Huntington, NY 11743
      By:    Christopher J. Cassar, Esq., Of Counsel

**New York State Office of the Attorney General**
*Counsel for the Defendants*
Nassau Regional Office
200 Old Country Road
Suite 240
Mineola, NY 11501
      By:    Christina H. Bedell, Assistant Attorney General

**SPATT, District Judge:**

The Plaintiff Russel Riley (the "Plaintiff") brought this federal civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Defendants Andrew Cuomo, in his official capacity of the Governor of the State of New York ("Governor Cuomo," the "Governor," or "Cuomo") and the New York State Police (the "NYSP") (collectively, the "Defendants").

Presently before the Court is a motion by the Defendants to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(1) and 12(b)(6). For the following reasons, the Defendants' motion is granted in its entirety.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are presumed to be true.

The Plaintiff owned and had a valid license for ten firearms. On January 9, 2017, members of the NYSP entered the Plaintiff's home without a warrant and seized ten firearms.

The firearms have not been returned to the Plaintiff, and there has been no hearing regarding the seizure of the firearms.

The Plaintiff makes broad references to the New York Secure Ammunition and Firearms Enforcement Act of 2013 (the "NY SAFE Act"), but does not explicitly state that his firearms were confiscated as a result of that statute.

### B. The Relevant Procedural History

On March 23, 2017, the Plaintiff filed his complaint. The complaint alleges that the NY SAFE Act is unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution in that it fails to provide gun owners who have had their firearms seized with a hearing. However, the Plaintiff does not seek a declaratory judgment declaring that the NY SAFE Act is unconstitutional. Furthermore, as stated above, he does not explicitly state that his guns were seized because of that statute; or, if they were, how that statute caused his firearms to be seized.

The complaint alleges that the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated when the Defendants seized his firearms without a warrant; failed to provide him with a hearing; and illegally obtained statements from him. In those ways, the Defendants allegedly violated Section 1983.

The Plaintiff seeks declaratory relief in the form of an order stating that the Defendants violated his constitutional rights. He asks that the Court order that the firearms be returned to him. Further, he seeks "a judgment . . . requiring the Defendants to conduct a prompt hearing following the seizure of the property in all cases at which time the Defendants must demonstrate probable cause for the seizure of the property and that it was necessary that the property remain in the custody of the Defendants." (Compl. Wherefore Clause ¶ 3).

The Plaintiff seeks injunctive and declaratory relief; and a judgment requiring the Defendants to provide notice and a hearing to any future victims of seizures similar to the one experienced by the Plaintiff. The complaint does not explicitly seek damages, but only reasonable attorneys' fees and costs. While the Court notes that the Plaintiff's memorandum in opposition to the motion to dismiss states that "the underlying complaint is not exclusively seeking an award of damages under § 1983," (Pl.'s Mem. in Opp. to Mot. to Dismiss at 4), a plaintiff is not permitted to amend his complaint by virtue of what is said in a memorandum of law, *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss . . . ." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998))). The complaint does not explicitly seek damages, and the Court cannot construe it otherwise.

On September 25, 2017, the Defendants filed the instant motion to dismiss the complaint for lack of jurisdiction pursuant to Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6).

## II.  DISCUSSION

### A.  As to the Defendants' Motion to Dismiss Based on Sovereign Immunity

The Defendants have moved for dismissal based on sovereign immunity pursuant to Rule 12(b)(1).

As an initial matter, the Court first observes that within the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved.  *See Carver v. Nassau Cty. Interim Fin. Auth.,* 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing *Wisc. Dep't of Corr. v. Schacht,* 524 U.S. 381, 391, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998))); *see also Garcia v. Paylock,* 13–CV–2868 KAM, 2014 WL 298593, at *2 n.3 (E.D.N.Y. Jan. 28, 2014) ("It is an open question in the Second Circuit whether the claims of sovereign immunity should be viewed as raising a question of subject matter jurisdiction, and thus be evaluated under *339 Rule 12(b)(1), or as an affirmative defense analyzed under Rule 12(b)(6).").

This "distinction is significant," because "while [a district court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under FED. R. CIV. P. 12(b)(6), . . . in adjudicating a motion to dismiss for lack of subject-matter jurisdiction [pursuant to FED. R. CIV. P. 12(b)(1)], a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal.*

*v. Rowland,* 494 F.3d 71, 77 (2d Cir. 2007) (internal citations omitted). As such, in accordance

with the approach taken by other district courts within this Circuit, the Court will apply the

stricter standard set under Rule 12(b)(6) while analyzing Defendants' sovereign immunity

arguments. *See Tiraco v. New York State Bd. of Elections,* 963 F. Supp. 2d 184, 191 n.6

(E.D.N.Y. 2013) (noting that "[t]his distinction [] does not alter the outcome" of the case because

"the court [] considered only the pleadings and the relevant state and federal law and [drew] all

inferences in Plaintiff's favor") (citations omitted); *McMillan v. N.Y. State Bd. of Elections,* No.

10–CV–2502 (JG)(VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010) (looking "only to

the pleadings and to state and federal law" to resolve questions regarding sovereign immunity).

### 1. The Rule 12(b)(6) Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor

of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw

Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York*, 53 F.3d 465,

469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263

(E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

(2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule

12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a
> complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals
> of the elements of a cause of action, supported by mere conclusory statements, do
> not suffice. Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B.  The Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to  extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Rowland,* 494 F.3d at 95 (quoting U.S. CONST. AMEND. XI).  The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 90–100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *see also Huminski v. Corsones,* 386 F.3d 116, 133 (2d Cir. 2004).  Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden to prove such. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 237 (2d Cir. 2006).

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) (quoting 42 U.S.C. § 1983).  It is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh

Amendment immunity is not abrogated by that statute. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

### 1. Claims Against State Administrative Agencies

Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies. When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst,* 465 U.S. at 100.

### a. Application to the Plaintiff's Claims Against the NYSP

As the Eleventh Amendment bars all suits against administrative agencies of a state, the Plaintiff's claims against the NYSP cannot be sustained. Defendant New York State Police is a division in the executive department of New York—*see* section 210 of New York's Executive Law—and is therefore immune from all claims, both federal and state. Congress has not overridden states' sovereign immunity respecting constitutional claims brought under 42 U.S.C. § 1983. *Will*, 491 U.S. at 109. And it is well established that "New York State has not waived its sovereign immunity from Section 1983 claims." *Nolan v. Cuomo*, No. 11 CV 5827 (DRH)(AKT), 2013 WL 168674, at *7 (E.D.N.Y. Jan. 16, 2013) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39–40 (2d Cir. 1977)); *see also Mamot v. Bd. of Regents,* 367 F. App'x 191, 192 (2d Cir. 2010) (summary order); *Dube v. State Univ. of New York,* 900 F.2d 587, 594–95 (2d Cir. 1990) (holding that the Eleventh Amendment precludes an action under Section 1983 against SUNY, an integral part of the State of New York). Therefore, the NYSP is entitled to sovereign immunity on the Plaintiff's claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against the NYSP is granted.

### 2. Claims Against State Officials in Their Official Capacity

A suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993); *see also Will*, 491 U.S. at 71; *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir. 2003). However, "the applicability of the Eleventh Amendment bar [to suits against individuals in their official capacities] depends on the form of relief sought." *Lee v. Dep't of Children & Families,* 939 F.Supp.2d 160, 165–66 (D. Conn. 2013). Money damages cannot be recovered from state officers sued in their official capacities. *See e.g., Will,* 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Goonewardena v. New York,* 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities.").

Similarly, "judgments against state officers declaring that they violated federal law in the past" are also not permitted. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) (citing *Green v. Mansour,* 474 U.S. 64, 73, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)). However, prospective injunctive relief is available against individuals being sued in their official capacities in order to correct an ongoing violation

of federal law. *See Edelman,* 415 U.S. at 663; *Ex Parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). In this regard, through the doctrine of *Ex Parte Young,* a party may bring "a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (internal quotation marks and alteration omitted); *see also Arthur v. Nyquist,* 573 F.2d 134, 138 (2d Cir. 1978).

In order to determine whether the *Ex parte Young* exception allows the Plaintiff to bring suit against state officials, this Court must first determine whether the complaint alleges an ongoing violation of federal law and second, whether the Plaintiff seeks relief properly characterized as prospective. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002). "[T]o successfully avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's violation of federal law is of an ongoing nature as opposed to a case 'in which federal law has been violated at one time or another over a period of time in the past.' " *Papasan v. Allain,* 478 U.S. 265, 277–78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (quotation omitted). The inquiry for determining whether an "ongoing violation" exists is, "does the enforcement of the law amount to a continuous violation of plaintiffs constitutional rights or a single act that continues to have negative consequences for plaintiffs." *New Jersey Educ. Ass'n v. New Jersey,* No. 11–5024, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012).

Furthermore, when a plaintiff seeks prospective relief against a state official in their official capacity where the plaintiff alleges that a particular statute is unconstitutional, "the state officer . . . 'must have some connection with the enforcement of the act'" that includes "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that

duty." *Kelly v. New York State Civil Serv. Comm'n*, No. 14 CV 716 VB, 2015 WL 861744, at \*3 (S.D.N.Y. Jan. 26, 2015) (quoting *Ex Parte Young*, 209 U.S. at 157), *aff'd sub nom. Kelly v. New York Civil Serv. Comm'n*, 632 F. App'x 17 (2d Cir. 2016); *see also CSX Transp.*, 306 F.3d at 99 (amenability to suit under Eleventh Amendment requires "both the power and the duty" to take challenged action).

### a. Application to the Plaintiff's Claims Against Governor Cuomo in His Official Capacity

As stated above, the complaint does not explicitly seek damages. However, even if it did, the Plaintiff would be unable to seek that relief against Governor Cuomo in his official capacity. *Ying Jing Gan*, 996 F.2d at 529 ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." (internal citations omitted)).

As to his requests for declaratory and injunctive relief, the Court finds that the Plaintiff does not explicitly seek prospective relief. Instead, he seeks a declaration that the Defendants violated federal law in the past, and a return of his firearms. Courts have held that neither of these types of relief are prospective. *See Puerto Rico Aqueduct and Sewer*, 506 U.S. at 146 (stating that "judgments against state officers declaring that they violated federal law in the past" are not permitted under the *Ex Parte Young* doctrine); *Dotson v. Griesa,* 398 F.3d 156, 177 n.16 (2d Cir. 2005) (holding that Second Circuit precedent "preclude[s] a federal court from ordering affirmative action by either the state or federal government employees in their official capacities"); *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 233 (S.D.N.Y. 2013) ("[C]ourts in this Circuit have [held] . . . that the return of property taken by the state is barred by the Eleventh Amendment because that constitutes 'retrospective' relief." (collecting cases)), *aff'd*, 779 F.3d 97 (2d Cir. 2015); *Dean v. Abrams*, No. 94 CIV. 3704 (LAK), 1995 WL

791966, at *2 n.5 (S.D.N.Y. Dec. 26, 1995) ("The only exception to the Eleventh Amendment's protection is for 'prospective injunctive relief,' but Dean's demand for . . . the return of her property does not qualify for this exception." (collecting cases)).

While the Plaintiff does ask for an order declaring that the Defendants must afford any future victims of such seizures a prompt and fair hearing, the Plaintiff has not plead sufficient facts to demonstrate that he has standing to request such relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L. Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.")

"In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such judicial decree." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)). A plaintiff cannot seek injunctive relief merely for past injury. *O'Shea,* 414 U.S. at 495–96, 94 S. Ct. 669; *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998). Instead, "the injury alleged must be capable of being redressed through injunctive relief 'at that moment.' " *Robidoux v. Celani,* 987 F.2d 931, 938 (2d Cir. 1993) (quoting *Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 51, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991)).

Here, the Plaintiff does not allege that his guns will again be seized in the future. Indeed, as stated above, the Plaintiff did not state why his guns were seized. He does not plead sufficient facts to demonstrate standing to seek an order forcing the state to afford any future victims of seizures a prompt and fair hearing because he has not alleged that he will be a victim of such a seizure in the future.

Therefore, the Plaintiff does not seek prospective relief for an ongoing violation of federal law, and cannot avail himself of the *Ex Parte Young* doctrine. Governor Cuomo therefore has sovereign immunity with regard to the Plaintiff's claims.

The Plaintiff contends that he should be permitted to proceed on his theory of supervisory liability until he is able, through discovery, to determine which subordinate officials should be added to the complaint. This argument is completely unavailing.

First, "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir.2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)); *Richardson*, 347 F.3d at 435 ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations and internal quotation marks omitted)). Instead, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). As the Second Circuit has stated, a supervisory defendant's personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).

Accordingly, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or

'deliberate indifference' by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983)). The Plaintiff does not allege that any of the above factual circumstances are present here.

Second, the Plaintiff does not even allege that the Governor supervises the NYSP. Indeed, the complaint does not contain any allegations that are specific to Governor Cuomo.

Furthermore, as to the Plaintiff's argument that he should be permitted to maintain suit against Governor Cuomo until he has been afforded an opportunity to identify subordinate officials who have personal liability, the Plaintiff does not meet that "exception" to the supervisory liability rule here. The case cited by the Plaintiff for this very proposition held "[p]ermitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard, *i.e.,* more than possible and less than probable, should unlock the doors of discovery." *Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013) (internal citations and quotation marks omitted).

The *Dudek* court relied on the fact that the complaint failed to contain a single factual allegation that any of the supervisory defendant's subordinates were personally involved in the action. Here too, the Plaintiff does not allege that Governor Cuomo supervises members of the NYSP, nor does he allege any specific acts by any individual John Doe officers of the NYSP. Nor would the Plaintiff be permitted to avail himself of the exception allowing discovery to go forward where a litigant raises colorable claims against supervisors because that exception only applies to *pro se* litigants. *See Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) ("We therefore hold that when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the

13

plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery."); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 34 (2d Cir. 1996) (holding that where a pro se litigant mistakenly failed to name the individual corrections officers who might be liable, the pro se plaintiff would be afforded opportunity to amend his complaint after discovery); *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) (same).

Finally, the Plaintiff is also unable to bring claims against Governor Cuomo based on his allegation that the NY SAFE Act is unconstitutional. The Court notes again that the Plaintiff does not seek an order stating that the NY SAFE Act is unconstitutional. He instead alleges that it is unconstitutional, and seeks an order requiring the Defendants to afford victims of gun seizures fair hearings.

In any event, the Plaintiff has not alleged that the Governor has any duty to enforce the NY SAFE Act. Nor does N.Y. PENAL LAW § 400, the only specific statute cited by the Plaintiff, afford any duty or power to the Governor. To the extent that the Plaintiff relies on the fact that the NY SAFE Act was signed by Governor Cuomo, which the Court notes that he did not allege, "[t]he well-settled doctrine of absolute legislative immunity . . . bars actions against legislators or governors . . . on the basis of their roles in enacting or signing legislation." *Warden v. Pataki,* 35 F.Supp.2d 354, 358 (S.D.N.Y.1999), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir. 1999). Furthermore, "the vast majority of courts . . . have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden,* 35 F. Supp. 2d at 359.

Therefore, the Plaintiff has failed to allege that Governor Cuomo has the power or duty to take action regarding the NY SAFE Act, and the Governor has sovereign immunity over those claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against Governor Cuomo is granted.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the complaint based on sovereign immunity is granted in its entirety. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED:**

Dated: Central Islip, New York

April 16, 2018

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge